IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

M.L. DENESE SLAEY,                          )
                                            )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )        Civil Action No.: 1:08-cv-354
                                            )
JAMES ADAMS, et al.,                        )
                                            )
                                            )
            Defendants.                     )


## MEMORANDUM OPINION


On April 14, 2008, Plaintiff Mary Louise Denese Slaey filed this *Bivens* action.[1]  Ms. Slaey is attempting to hold the Defendants, who are all federal employees, personally liable for their participation in an allegedly unreasonable search and seizure that violated her Fourth Amendment rights.  Each Defendant in this case has or had an affiliation with one of the following three federal offices: the United States Attorney's Office for the Eastern District of Virginia ("E.D. Va. AUSA"), the United States Attorney's Office for the Eastern District of Pennsylvania ("E.D. Pa. AUSA"), or the General Services Administration ("GSA").

The E.D. Va. AUSA Defendants moved to dismiss the claims against them on July 14, 2008.  (Dkt. No. 5).  On that same date, the E.D. Pa. AUSA Defendant and GSA Defendants

---

[1]     Under *Bivens*, victims of a constitutional violation committed by a government official have a right to recover damages against that official, even though no statute confers such a right.  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

submitted a motion captioned, "Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment." (Dkt. Nos. 8, 9). Because the Court finds that all but one of Ms. Slaey's claims are time-barred and that the remaining claim cannot succeed because the Defendants it is asserted against are entitled to immunity, the Court dismisses Plaintiff's case in its entirety.

## I. FACTS[2]

Ms. Slaey is the Chief Executive Officer and sole shareholder of Systems Integration & Management, Inc. ("SIM"), a Delaware Corporation with its principal office in Vienna, Virginia. SIM provides support services to entities throughout the northeastern United States. On or about October 1, 1998, SIM was awarded a Basis Ordering Agreement ("BOA") from GSA. A BOA is a mechanism by which GSA helps administer a contract between a government agency and a service provider by establishing certain service criteria and billing rates. The service provider in this case was SIM.

GSA developed a suspicion that SIM had acted fraudulently under the BOA between October 1998 and January 2001. Consequently, GSA launched an investigation led by Special Agent James Adams ("SA Adams"). The E.D. Pa. AUSA Office assigned Assistant United States Attorney Mann ("AUSA Mann") to the investigation. As a part of that investigation, SA Adams served a subpoena at SIM's offices and interviewed SIM personnel, including Ms. Slaey. GSA's suspicions of fraudulent activity heightened after a taped telephone call, between an informant and SIM employees, led GSA officials to believe that SIM was withholding critical documents from the Government.

---

[2]     As required, the following facts are viewed in the light most favorable to Plaintiff. *See* Standard Of Review, infra, II.B.

Motivated by SIM's lack of compliance with GSA's requests, SA Adams contacted the E.D. Va. AUSA Office to apply for a warrant that would allow him and other agents to search SIM's offices. SA Adams prepared a probable cause affidavit and drafted a proposed warrant that contained two attachments. The first attachment, Attachment A, described the premises to be searched. The second attachment, Attachment B, outlined the items and documents to be searched for and seized if found.

Significantly, Attachment B did not restrict the agents' seizure to documents dated within the time period between 1998 and 2001, which was when SIM allegedly engaged in the fraud. Attachment B also failed to mandate that the agents only take documents relating to the BOA contract between SIM and GSA. For example, Paragraph A.2 permitted the seizure of any and all personal and business banking records held by Ms. Slaey regardless of their date or relation to the BOA contract. Paragraph A.3 permitted the seizure of documents relating to the SIM BOA dated well after the alleged fraudulent period ended in 2001.

Special Assistant United States Attorney Brian Quinn ("SAUSA Quinn") of the E.D. Va. submitted the proposed search warrant to an E.D. Va. Magistrate Judge. SAUSA Quinn also submitted a motion to seal and an accompanying order to seal in an attempt to obtain permission from the Magistrate Judge to leave the warrant at the searched site without the two attachments. On May 4, 2004, the proposed search warrant and motion to seal were granted by the Magistrate Judge.

On May 5, 2004, SA Adams and other GSA agents arrived at the SIM offices in Vienna, Virginia and conducted the search. Agents took items and documents dated before, during, and after the alleged fraudulent period. Furthermore, the agents seized materials having relatively little to do with the alleged fraudulent activity occurring at SIM. Pursuant to the approved

warrant and order to seal, SA Adams did not leave copies of Attachments A and B at SIM's offices, but he did leave inventory sheets and a copy of the warrant.

Ms. Slaey claims that she did not receive a copy of Attachment B to the warrant, which her attorney requested, until several weeks after the search. The record does not reflect a specific date upon which Ms. Slaey obtained Attachments A and B. But in an attempt to uncover the probable cause that led to the search of SIM's offices, Ms. Slaey filed a motion in this Court on April 22, 2005 entitled "Motion to Unseal the Search Warrant Affidavit of Probable Cause."[3] On that same day, Ms. Slaey filed a memorandum supporting that motion to which she appended Attachments A and B. Therefore, Ms. Slaey clearly had possession of Attachments A and B by April 22, 2005.

Ms. Slaey also alleges that the Government failed to return items and documents taken during the search within the thirty-day deadline established by Attachment B, and that AUSA Mann failed to obtain a court order permitting the Government to retain the SIM property beyond the deadline date. Many of SIM's operational items were seized during the search. Ms. Slaey argues that the Government's possession of these items caused SIM's business to eventually fail.

Moreover, Ms. Slaey claims that the Government destroyed some of the seized items. On December 28, 2004, Ms. Slaey met with computer consultants because she was purportedly having difficulty operating the computer equipment the Government had returned to her. One of those consultants produced a report informing Ms. Slaey that the seized hardware was not returned in the same state as it existed at the time of the seizure, and that many of the returned

---

[3] *See Systems Integration, et al v. U.S. Gen. Servs. Admin., et al.*, 1:05-mc-00022 (E.D. Va. 2005). Although this proceeding resulted in the court ordering the Government to return property seized in the search, the court denied Ms. Slaey's motion to unseal the probable cause affidavit.

hard drive copies were not in working order.  As a result, SIM was unable to restore many of the systems that were in operation before the search.  Further, the report claims that sensitive equipment was handled carelessly and that hard drives were rendered unreadable and unusable. Ms. Slaey appended this report as an attachment to the memorandum supporting her motion to unseal the probable cause affidavit filed on April 22, 2005.

Due in large part to the information obtained from the search, Ms. Slaey was linked to SIM's allegedly fraudulent activity.  On December 13, 2005 she was indicted for conspiracy, false claims, and bribery of a public official in the United States District Court for the E.D. Pa. On February 15, 2006, Ms. Slaey filed a motion to suppress the evidence seized during the search.  On April 26, 2006, that motion was granted.  The court concluded, *inter alia*, that Attachment B was "constitutionally infirm."[4]  The Government did not appeal the suppression ruling.  On August 21, 2006, pursuant to the Government's motion, the court issued an order dismissing all charges against Ms. Slaey.  Six of the seven counts in the indictment were dismissed without prejudice, and one was dismissed with prejudice.

Ms. Slaey filed this *Bivens* action on April 14, 2008 to recover damages from selected federal government officials who participated in the activities surrounding the search of SIM's offices and seizure of its contents.  Ms. Slaey alleges that these officials violated her constitutional Fourth Amendment rights.   In her Complaint, which names over fifteen defendants, Ms. Slaey formally states one general claim that she was the victim of an unreasonable search and seizure, and asserts numerous factual allegations in support of that claim.  These factual allegations, however, point to several distinct Fourth Amendment claims brought against the varying defendants.  Construing the Complaint in the light most favorable to

---

[4]     *United States v. Slaey*, 433 F.Supp.2d 494, 500 (E.D. Pa. 2006).

Ms. Slaey,[5] the Court will discern as many Fourth Amendment claims from the factual allegations as possible.

Ms. Slaey essentially makes six claims. First, she attempts to recover from the E.D. Va. AUSA Defendants for their participation in the process of obtaining permission to leave a copy of the search warrant at SIM's facilities without Attachments A and B, which described the place to be searched and the items to be seized, respectively ("Claim 1").[6]

Second, Ms. Slaey claims that SA Adams violated her Fourth Amendment rights by drafting a warrant broader in scope than probable cause allowed, and that the E.D. Va. AUSA Defendants also violated her rights by overseeing and supervising this activity ("Claim 2").[7]

Third, Ms. Slaey alleges that the GSA Defendants[8] violated her Fourth Amendment rights by seizing items that were outside the scope of the warrant during their search of the SIM offices ("Claim 3").

Fourth, Ms. Slaey claims that the GSA Defendants maintained possession of the seized items for longer than the thirty-day period that Attachment B allowed ("Claim 4").

Fifth, Ms. Slaey asserts that AUSA Mann violated her constitutional rights by failing to file a motion seeking an extension of time after the GSA Defendants maintained possession of

---

[5]   *See* Standard Of Review, infra, II.B.
[6]   The E.D. Va. AUSA Defendants in this case consist of SAUSA Quinn, as well as the other E.D. Va. Office employees named in the Complaint, who were his alleged supervisors.
[7]   Based on a reading of the Complaint, and viewing the facts in the light most favorable to the nonmoving party (*see* Standard Of Review, infra, II.B.), the Court finds that Ms. Slaey intended to hold the E.D. Va. AUSA Defendants liable for supervising a process that produced a warrant broader in scope than probable cause allowed. While Ms. Slaey did not clearly and explicitly state her overbroad warrant claim against the E.D. Va. AUSA Defendants in her Complaint, it is fair to infer from the Complaint that she intended to hold these Defendants liable for this alleged harm.
[8]   The GSA Defendants are those parties named in the Complaint who are described as being employed by GSA.

seized SIM property for longer than the thirty-day deadline permitted by Attachment B ("Claim 5").[9]

Sixth, Ms. Slaey alleges that the GSA Defendants damaged SIM property seized during the search and rendered previously operating portions of the SIM computer system unusable ("Claim 6").[10]

Finally, Ms. Slaey states in her Complaint that "Ms. Mann was the AUSA responsible for the investigation of Ms. Slaey and SIM." Complaint at ¶ 56. While this statement does not accuse AUSA Mann of committing specific harms during the search and seizure process, it does link AUSA Mann to the harm alleged in the above claims. Therefore, out of an abundance of caution, the Court will assume that Claims 1, 2, 3, 4, and 6 are asserted against AUSA Mann, as well.

---

[9]     Ms. Slaey concedes this claim in her Opposition Brief. Pl. Opp. at 39 ("[T]o the extent that Slaey's claim against AUSA Mann implicates her failure to 'seek an extension of time to complete the data retrieval process' (Complaint at ¶ 56), AUSA Mann is admittedly entitled to absolute immunity.") But because the Complaint, which is the operative document at the motion to dismiss stage, asserts that Ms. Slaey suffered harm because of AUSA Mann's failure to seek an extension of time, the Court will address Claim 5 in its analysis out of an abundance of caution.

[10]     Ms. Slaey also concedes the infirmity of this claim in her Opposition Brief. Pl. Opp. at 46-47 ("[T]o the extent that Slaey's Complaint is construed as seeking to assert a Fourth Amendment violation based upon the retention and destruction of the seized property . . . Slaey concedes that the dismissal of such claim would be warranted."). However, like Claim 5, the Court will address Claim 6 because the harm encompassed by this claim is alleged in the Complaint.

## II. DISCUSSION

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because Ms. Slaey's claims arise under the United States Constitution. Furthermore, *Bivens* authorizes this Court to award monetary damages to Ms. Slaey for any injuries she suffered as a result of the Defendants violating her Fourth Amendment rights. *Bivens*, 403 U.S. at 399. Additionally, this Court has venue pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in the Eastern District of Virginia.

### B. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court reviewing a complaint on a Rule 12(b)(6) motion must accept all well-pleaded allegations as true and must construe all factual allegations in favor of the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The issue on a motion to dismiss is not "whether a plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint must allege facts that plausibly state a claim upon which relief could be granted. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007).

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). A narrow exception to this rule exists, however, "for documents the authenticity of which are not disputed by the parties; for

official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.*; *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Indeed, courts may take judicial notice of public documents (such as court records) neither referenced by nor integral to the plaintiff's complaint without converting a motion to dismiss into one for summary judgment. *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *Bes Enterprises, Inc. v. Natanzon*, 2006 WL 3498419, at *4 (D. Md. 2006); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss . . . we are not precluded in our review of the complaint from taking judicial notice of items in the public record").

Here, Ms. Slaey refers in her Complaint to the motion to unseal the probable cause affidavit that she previously filed in this Court. Specifically, she pleads that

> [o]n April 21, 2005, [Ms. Slaey, et al.] filed a motion pursuant to Rule 41 of the Federal Rules of Criminal procedure for the entry of an order requiring the return of property seized during the May 5, 2004 search, and unsealing the search warrant affidavit of probable cause in a miscellaneous case in this Court captioned *Systems Integration and Management, Inc., et al. v. United States General Services Administration, et al.*, Case No. 1:05mc22. On September 16, 2005, after extensive briefing . . . The Honorable T.S. Ellis, III, entered an order in response to Ms. Slaey's Rule 41 motion, and granted the motion to return seized documents and things in part and denied the motion in part.

Complaint at ¶ 57-58. This language refers to both the Rule 41 motion and Judge Ellis's order, notes that extensive briefing occurred, and even mentions the case file name and number. In addition, the documents that comprise the case file pertaining to the Rule 41 motion are all public records. In light of these facts and the law above, the Court takes judicial notice of the documents in the Case No. 1:05-mc-22 case file and will consider these documents at the motion

to dismiss stage and in the statute of limitations analysis below.  *See Alternative Energy*, 267 F.3d at 33; *Gasner,* 162 F.R.D. at 282; *Papasan*, 478 U.S. at 268.[11]

Additionally, when matters outside the complaint are presented to the court at the motion to dismiss stage, the court can convert a motion to dismiss under Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment under Fed. R. Civ. P. 56.  *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 260-61 (4th Cir. 1998).  Importantly, however, such a conversion is only appropriate if the nonmoving party has adequate notice.[12]  *Id.*  The Fourth Circuit has used the following evidence to support the conclusion that the nonmoving party had adequate notice: (1) the fact that the motion is captioned "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment"; (2) the filing of affidavits by the moving party in support of the motion to dismiss; (3) the filing of affidavits by the nonmoving party to rebut the motion to dismiss.  *Id.*

All three of these "indicia of adequate notice" are present in this case.  First, the GSA Defendants and AUSA Mann titled their motion to dismiss, "Motion to Dismiss, or in the Alternative, Motion for Partial Summary Judgment."  Second, the GSA Defendants and AUSA Mann attached an affidavit and other documents to the memoranda in support of their motion.  Third, Ms. Slaey also attached an affidavit and other documents to the memorandum she filed in opposition to the Defendants' motion.  These facts show that Ms. Slaey unquestionably had

---

[11]    Documents contained in the Case No. 1:05-mc-22 case file relied on below are the memorandum filed by Ms. Slaey in support of her motion to unseal the probable cause affidavit, Attachments A and B, and the computer consultant report.

[12]    Formal notification is not required.  *Laughlin*, 149 F.3d at 261.

adequate notice that the motion filed by the GSA Defendants and AUSA Mann could be converted to a motion for summary judgment.[13]

Should a court choose to convert a motion to dismiss into a motion for summary judgment, the summary judgment standard applies. Summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). As the Supreme Court has explained, a fact is "'material' only if it might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Finally, in making a summary judgment determination, the court must view the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. v. Zenith Radio, 475 U.S. 574, 587-88 (1986).

### C. Statute of Limitations

**i. Statute of Limitations Provisions**

For the reasons stated below, all of Ms. Slaey's claims, with the exception of Claim 2, are time-barred. Because there is no federal statute providing a period of limitation for a Bivens action, the court should apply the appropriate state tort statute of limitations. See Wilson v. Garcia, 471 U.S. 261, 266-70 (1985); Reinbold v. Evers, 187 F.3d 348, 358 n.10 (4th Cir. 1999) (en banc); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir.), cert. denied, 464 U.S. 916 (1983). Therefore, the Virginia statute of limitations governs this matter. As for which Virginia statute of limitations provision applies, the Fourth Circuit has determined that claims arising from

---

[13]     Had Ms. Slaey thought further discovery was necessary to adequately oppose summary judgment, she could have sought to obtain this discovery by moving under Fed. R. Civ. P. 56(f). See Laughlin, 149 F.3d at 261.

searches pursuant to a warrant are governed by Va. Code Ann. § 8.01-243(A), which is Virginia's two-year statute of limitations for personal injury matters. *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981).

Also, when applying the state statute of limitations to a federal constitutional claim, the court should consider the state's tolling provision for that statute of limitations. *Scoggins v. Douglas*, 760 F.2d 535, 537 (4th Cir. 1985) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 484-86 (1980)); *see Wallace v. Kato*, 127 S. Ct. 1091, 1098 (2007) ("[w]e have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation"). A court should not apply the tolling provision, however, if it is inconsistent with federal law. *Scoggins*, 760 F.2d at 537.

The tolling provision relevant in this case is Va. Code Ann. § 8.01-229(K), which provides that the statute of limitations is tolled in a personal action for damages (such as a *Bivens* action) during a criminal proceeding that arises "out of the same facts" as the personal action. *Id.* However, there is virtually no guidance from the tolling provision itself or the case law on how to interpret the "out of the same facts" language.[14] Not surprisingly, the parties disagree over whether this *Bivens* action arises out of the same facts as Ms. Slaey's criminal matter.

The Court's ultimate decision today regarding the survival of Ms. Slaey's six claims is not influenced by the application of the tolling provision. Therefore, it is not necessary to decide whether Ms. Slaey's *Bivens* claims arose from the same facts as the criminal prosecution. Instead, the Court will assume that the tolling provision applies.

---

[14] Only one known case, *Carr v. Hazelwood*, has applied Va. Code Ann. § 8.01-229(K). 2007 WL 1225757 (W.D. Va. April 24, 2007). *Carr* is not particularly instructive here because in that case, the court did not interpret the "out of the same facts" language. Instead, it chose not to apply the tolling provision on the grounds that no criminal prosecution ever occurred. *Id.* at *2.

12

Under § 8.01-229(K), the tolling period begins on "the date of the issuance of a warrant, summons or capias, the return or filing of an indictment or information, or the defendant's first appearance in any court as an accused in such a prosecution, whichever date occurs first." *Id.* It is this Court's view that the term "warrant" refers to an arrest warrant and not a search warrant.[15] The first triggering events to occur in this case were the filing of Ms. Slaey's indictment and the issuance of a bench warrant in Ms. Slaey's name, both of which occurred on December 13, 2005. Therefore, the tolling period began on that date.

The tolling period ends on "the date of the final judgment or order in the trial court, the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last." *Id.* Here, Ms. Slaey's motion to suppress the evidence seized during the search of the SIM property was granted, and that led to the Government moving to dismiss the indictment against her. The court's dismissal order that resulted from this motion terminated the criminal case against Ms. Slaey and extinguished the

---

[15]     When discerning the meaning of the term "warrant," it is helpful to use the canon of statutory construction *noscitur a sociis*, which holds that "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Black's Law Dictionary* 1087 (8th ed. 2004). In the criminal law context, a "summons" is "[a] notice requiring a person to appear in court as a juror or witness." *Id.* at 1477. Formerly, a summons referred to "a writ directing a sheriff to summon a defendant to appear in court." *Id.* The term "capias" is used to describe "[a]ny of various types of writs that require an officer to take a named defendant into custody." *Id.* at 221. These two terms, along with "the defendant's first appearance in any court as an accused in such a prosecution," involve the court exercising its power to bring a person before it. The remaining term that can trigger the tolling of the statute of limitations under Va. Code Ann. § 8.01-229(K) is "the return or filing of an indictment or information," which deals with the act of formally charging or prosecuting an individual.

Applying *noscitur a sociis*, this Court construes the term "warrant" in § 8.01-229(K) to cover only arrest warrants and not search warrants. This is because, like many of the triggering terms defined in the previous paragraph, an arrest warrant involves the power of the court to bring an individual before it. In contrast, a search warrant deals with the power of the court to merely search an individual's person or property. Furthermore, the triggering terms in the tolling provision are similar to an arrest warrant in that they all directly impact an individual's right to be free. A search warrant, on the other hand, is more commonly viewed as affecting an individual's privacy rights.

controversy. Because neither party was aggrieved by the court's order, there was nothing to appeal. *See Parr v. United States*, 351 U.S. 513, 517 (1956) ("Only one injured by the judgment sought to be reviewed can appeal.").[16]  As a result, in this case, the tolling period ends on "the date of the final judgment or order in the trial court," which occurred when the criminal charges against Ms. Slaey were dismissed on August 21, 2006.[17]  In sum, the Court will assume that the two-year Virginia personal injury statute of limitations was tolled in this case from December 13, 2005 to August 21, 2006.

## ii. Accrual of the Claims

In order to complete the statute of limitations analysis, the Court must determine when the claims asserted by Ms. Slaey accrued. While the issue of which statutes of limitations and tolling provisions apply is a matter of state law, the time at which a claim accrues is a question of federal law. *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996). "Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about

---

[16]     Ms. Slaey could argue that she was aggrieved and thus had a right to appeal because six of the seven counts in the indictment were dismissed *without* prejudice instead of *with* prejudice. As a result, the Government theoretically could charge Ms. Slaey again under the six counts. The Fourth Circuit addressed this exact situation in *United States v. Lanham*. 631 F.2d 356 (4th Cir. 1980). In that case, the defendants appealed the government's dismissal without prejudice of the indictment against them on the grounds that the dismissal should have been with prejudice. *Id.* at 357. The Court held that "a dismissal without prejudice is not immediately reviewable" and, accordingly, dismissed the appeals. *Id.* at 357. Furthermore, in holding that an order dismissing an indictment without prejudice was not reviewable, the Supreme Court in *Parr* explained that "[s]o far as [the defendant's] standing for appeal is concerned, it makes no difference whether the dismissal still leaves [the defendant] open to further prosecution." *Parr*, 351 U.S. at 517.
[17]     Even if the court order dismissing the charges against Ms. Slaey could be appealed, and the tolling period ended instead on "the date on which the time for noting an appeal has expired," the Court's conclusions below regarding whether Ms. Slaey's claims were timely filed would not change.

the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955; *see United States v. Kubrick,* 444 U.S. 111, 122-24 (1979).   More specifically, when determining whether a claim accrues, "it is critical that the plaintiff know that he has been hurt and who inflicted the injury." *Nasim*, 64. F.3d at 955.   When the plaintiff becomes aware of these two facts, he is on inquiry notice and has a duty to inquire about reasonably discoverable details. *Id.*

Claim 1 is Ms. Slaey's attempt to hold the E.D. Va. AUSA Defendants and AUSA Mann liable for participating in the process that resulted in the warrant being left at SIM's offices without Attachments A and B, which described the place to be searched and the items to be seized.  Ms. Slaey possessed sufficient facts about this harm when she first obtained a copy of the search warrant without the attachments.   At that point, she could have read the warrant, which stated "See Attachment A" and "See Attachment B," and noticed that these attachments were not appended to the warrant. *See* Warrant at 1.   She also could have noticed, at that point, that the warrant lacked a description of the place to be searched and the items to be seized. Additionally, a reading of the warrant would have enabled Ms. Slaey to discern that one or more of the federal government officials involved in the search caused this harm, since the warrant contained the names of federal government officials.   Here, however, it is unclear when Ms. Slaey first obtained the warrant, read it, or became aware of the harm and who caused it.

But it is clear that, in the weeks following the search, Ms. Slaey (or her attorney) read the warrant and became aware of the harm caused by the federal officials.  This is because at some point within those weeks, Ms. Slaey's attorney sought and obtained copies of Attachments A and

B from a United States Attorney's Office.[18] Ms. Slaey then appended copies of the warrant and

Attachments A and B to the memorandum she filed on April 22, 2005 in support of her motion to

unseal the probable cause affidavit.  Therefore, it is unquestionable that on April 22, 2005, Ms.

Slaey had the necessary documents before her to be aware of the harm asserted in Claim 1 (that

the warrant was left without the attachments describing the place to be searched and the items to

be seized), as well as who caused that harm (federal officials involved in the search).  *See Nasim*,

64. F.3d at 955.  As a result, Claim 1 accrued at the latest on April 22, 2005.  By that date, Ms.

Slaey definitely "possessed sufficient facts" about the harm asserted in Claim 1 "that reasonable

inquiry would reveal a cause of action."  *See Nasim*, 64 F.3d at 955; *Kubrick*, 444 U.S. at 122-

24.

Applying the two-year statute of limitations period described above and factoring in the

December 13, 2005 to August 21, 2006 tolling period, a claim that accrues on April 22, 2005

must be filed by December 31, 2007.[19]  Because Ms. Slaey did not file Claim 1 until April 14,

2008, this claim is time-barred.

In Claim 3, Ms. Slaey argues that the GSA Agents who participated in the search at the

SIM offices, as well as AUSA Mann, violated her Fourth Amendment rights by seizing items

that were outside the scope of the warrant.  Ms. Slaey made this same argument in the

memorandum she filed on April 22, 2005 in support of her motion to unseal the probable cause

affidavit.  Specifically, Ms. Slaey argued that "[t]he execution of the search warrant was overly

broad" and that "[o]f the items seized, those which were not described in the Warrant far

---

[18]     The exact date that Ms. Slaey obtained these copies is not known at this stage of the litigation.

[19]     Pursuant to Fed R. Civ. P. 6, April 23, 2005 was the first day counted in the calculation.  The days that the tolling provision began and ended, December 13, 2005 and August 21, 2006, respectively, were not included in the statute of limitations calculation.

outnumbered those described." Brief for Pl. at 12, *Systems Integration, et al v. U.S. Gen. Servs. Admin, et al.*, 1:05-mc-00022 (E.D. Va. 2005).   Ms. Slaey also asserted that "at least eleven government agents spent eleven hours ransacking the premises and indiscriminately seizing any documents which interested them." *Id.*

Additionally, when Ms. Slaey filed her April 22, 2005 memorandum, she appended the search warrant inventory list, the search warrant, and Attachment B.  A comparison between the search warrant inventory list and Attachment B shows how much the search exceeded the scope of the warrant.  In sum, the arguments made in and the attachments appended to the April 22, 2005 memorandum clearly show that Ms. Slaey had enough facts before her by that date to put her on inquiry notice that the items seized during the search exceeded the scope of the search warrant. *See Nasim*, 64 F.3d at 955.  Therefore, Claim 3 accrued at the latest on April 22, 2005.

Applying the same statute of limitations calculation that was used for Claim 1 (which also accrued on April 22, 2008), Claim 3 is time-barred.  While Ms. Slaey was required to file Claim 3 by December 31, 2007, she did not file this claim until April 14, 2008.

In Claim 4, Ms. Slaey asserts that the GSA Defendants and AUSA Mann maintained possession of the seized items for longer than the thirty-day period allowed by Attachment B. Ms. Slaey had enough facts to know of this harm when she obtained possession of Attachment B, saw the thirty-day limitation language, and then realized that her property had not been returned within that thirty-day period.

As mentioned earlier, while it is not clear when Ms. Slaey first obtained a copy of Attachment B, she definitely possessed one by April 22, 2005, which was when she appended a copy of the attachment to her memorandum in support of her motion to unseal the probable cause affidavit.  Because Ms. Slaey possessed Attachment B by April 22, 2005, she had enough facts to

know, by that date, that the thirty-day deadline existed and had long since passed. Ms. Slaey also was well aware that property taken during the search was not returned within that thirty-day deadline, as she argued in her memorandum that "the government has retained [Ms. Slaey's] property for more than eleven months and has denied [her] access to the seized property." Brief for Pl. at 3, *Systems Integration, et al v. U.S. Gen. Servs. Admin, et al.*, 1:05-mc-00022 (E.D. Va. 2005).

Therefore, Ms. Slaey unquestionably "possessed sufficient facts" about the Government's violation of the thirty-day deadline such "that reasonable inquiry [would] reveal [her] cause of action" by April 22, 2005. *See Nasim*, 64 F.3d at 955; *Kubrick*, 444 U.S. at 122-24. As a result, Claim 4 accrued at the latest by that date. Applying the same statute of limitations calculations used for Claims 1 and 3, Claim 4 is time-barred. While Ms. Slaey was required to file Claim 4 by December 31, 2007, she did not file this claim until April 14, 2008.

In Claim 5, Ms. Slaey asserts that AUSA Mann violated her constitutional rights by failing to file a motion seeking an extension of time after the GSA Defendants maintained possession of seized SIM property for longer than the thirty-day deadline that Attachment B permitted. As explained in the Claim 4 analysis, Ms. Slaey possessed enough facts about the Government's violation of the thirty-day deadline to support accrual by April 22, 2005. At that point in time, Ms. Slaey was placed on inquiry notice and was tasked with a duty of inquiring about reasonably discoverable details pertaining to that particular harm. *See Nasim*, 64. F.3d at 955. Learning reasonably discoverable details during the inquiry, however, does not cause the accrual date to change.

The individual who set the search warrant deadline for possessing the seized property, whether any extensions to that deadline were applied for or granted, and the people who applied

for or failed to apply for those extensions are all readily discoverable details for a person whose property is being retained by the Government for longer than permitted. Therefore, that AUSA Mann did not ask for an extension to the thirty-day deadline (Claim 5) is a readily discoverable detail that Ms. Slaey had a duty to inquire about after the accrual of her previous claim regarding the Government's violation of the thirty-day deadline (Claim 4). As a result, Claim 5 shares the same accrual date as Claim 4, which is April 22, 2005. Applying the same statute of limitations calculation used for Claims 1, 3, and 4, Claim 5 is time-barred. While Ms. Slaey was required to file Claim 5 by December 31, 2007, she did not file this claim until April 14, 2008.

In Claim 6, Ms. Slaey alleges that the GSA Defendants and AUSA Mann damaged SIM property seized during the search and rendered previously operating portions of the SIM computer system unusable. On December 28, 2004, Ms. Slaey met with computer consultants because she was having difficulty operating the computer equipment that had been returned to her. At some point in time after this meeting, one of the consultants produced a report informing Ms. Slaey that some of the seized hardware was not returned in the same state as it existed at the time of the seizure, and that many of the returned hard drive copies were not in working order. As a result, Ms. Slaey argues, many of SIM's computer systems that were in operation before the search were unable to be restored. The report also claims that sensitive equipment was handled carelessly, and that this caused hard drives to be rendered unreadable and unusable.

While the record does not reflect the exact date when Ms. Slaey obtained the report from the computer consultant, she definitely possessed it by April 22, 2005, which was when she appended it to her memorandum in support of her motion to unseal the probable cause affidavit. Therefore, Ms. Slaey "possessed sufficient facts" to be on inquiry notice about the Government harming the seized items and SIM's business operations (Claim 6) by April 22, 2005. *See*

*Nasim*, 64 F.3d at 955.  Applying the same statute of limitations calculation used for Claims 1, 3, 4, and 5, Claim 6 is time-barred.  While Ms. Slaey was required to file Claim 6 by December 31, 2007, she did not do so until April 14, 2008.

In sum, Claims 1, 3, 4, 5, and 6 are all time-barred by Virginia's two-year statute of limitations, even when the tolling provision is applied.  Therefore, these claims all fail to state a claim upon which relief can be granted and, as a result, must be dismissed under Fed. R. Civ. P. 12(b)(6).[20]

Claim 2, however, was timely filed.  In Claim 2, Ms. Slaey asserts that SA Adams violated her Fourth Amendment rights by drafting a warrant broader in scope than probable cause allowed, and that the E.D. Va. AUSA Defendants and AUSA Mann should be liable for overseeing and supervising this activity.  In order for Ms. Slaey to have had sufficient facts to be aware of this harm, she at least must have possessed copies of Attachment B and the probable cause affidavit.  In such a circumstance, she would have been able to compare Attachment B with the probable cause affidavit and determined whether the scope of the former exceeded the scope of the latter.

---

[20]     Ms. Slaey asserts that accrual of all of her claims should be delayed until August 21, 2006, the date on which criminal charges against her were dismissed.  She attempts to support this assertion by arguing that *Heck v. Humphrey*, 512 U.S. 477 (1994) requires such a result.  In *Heck*, the Supreme Court held that in order to recover damages for a constitutional tort claim, the plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.  In such a case, the plaintiff's claim has not accrued until the conviction is set aside. *Id.* at 489.

        Worth noting is that the *Heck* rule only applies to a defendant who was convicted of a crime.  In the 2007 *Wallace* case, the Supreme Court reiterated this point by stating, "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or a sentence that has *not* been . . . invalidated,' that is to say, 'an outstanding criminal judgment.'" *Wallace v. Kato*, 127 S.Ct. 1091, 1097-98 (2007) (citing *Heck*, 512 U.S. at 487).  Because Ms. Slaey was never criminally convicted, *Heck* cannot be used to justify delaying accrual of any claims in this case.

While Ms. Slaey possessed Attachment B by April 22, 2005, the probable cause affidavit remained sealed until March 24, 2006. Therefore, March 24, 2006 is the earliest possible date that Claim 2 could accrue. Applying the Virginia tolling provision, Ms. Slaey had until August 22, 2008 to file this claim. Because Claim 2 was filed on April 14, 2008, it is not time-barred.

### D. Absolute Immunity

The next issue is whether the E.D. Va. AUSA Defendants and AUSA Mann are entitled to absolute immunity. The Court holds that the E.D. Va. AUSA Defendants enjoy absolute immunity from the entire suit, and that AUSA Mann is entitled to absolute immunity for some, but not all of her actions. The absolute immunity analysis requires the court to examine "the nature of the function performed." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)). A prosecutor who is "perform[ing] . . . investigative functions normally performed by a detective or police officer" is not entitled to absolute immunity for any damage he causes while acting in that role. *Kalina*, 522 U.S. at 126 (citing *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973). However, a prosecutor is entitled to absolute immunity when his actions are "intimately associated with the judicial phase of the criminal process" and he is performing "the traditional functions of an advocate." *Burns v. Reed*, 111 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)) (internal quotation marks omitted); *Kalina*, 522 U.S. at 126, 131.

The Supreme Court has applied absolute immunity to prosecutors when their actions relate to "initiating a prosecution" and "presenting the [government's] case" at trial. *Burns*, 111 U.S. at 486 (quoting *Imbler*, 424 U.S. at 430-31) (internal quotation marks omitted). But absolute immunity can also attach to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 487 (citing *Imbler*, 424 U.S. at 431). Indeed, a

prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity." *Id.* at 492. Permitting individuals to bring suit based on "pretrial court appearances by the prosecutor in support of taking criminal action" creates the potential for "vexatious litigation," which might threaten the independence of the prosecutor. *Id.* The doctrine of absolute immunity mitigates this concern and thus "serves the policy of protecting the judicial process." *Id.*

In *Burns*, for example, the Supreme Court addressed the issue of when the doctrine of absolute immunity applied to a prosecutor. In that case, the plaintiff sued the prosecutor under 42 U.S.C. § 1983 because of (1) comments made by the prosecutor to police officers during an investigation about the legal acceptability of certain investigative techniques and (2) comments made by the prosecutor at a probable cause hearing that led to the issuance of a search warrant. *Burns*, 111 U.S. at 482, 487.[21] The Court denied absolute immunity to the prosecutor regarding the legal advice he gave to the police because "advising the police in the investigative phase of a criminal case" is not "intimately associated with the judicial phase of the criminal process." *Id.* at 492 (quoting *Imbler*, 424 U.S. at 430). On the other hand, the Court granted absolute immunity to the prosecutor for his actions at the probable cause hearing because such a hearing *is* intimately associated with the judicial phase of the criminal process. *Id.* at 492.

The Court reasoned that "appearing before a judge and presenting evidence in support of a motion for a search warrant clearly involve the prosecutor's role as an advocate for the State, rather than his role as administrator or investigative officer." *Burns*, 111 U.S. at 492 (quoting *Imbler*, 424 U.S. at 430-31) (internal quotations marks omitted). The Court supported this

---

[21]    42 U.S.C. § 1983 "created a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina*, 522 U.S. at 123. *Bivens* claims and § 1983 claims are similar in that they permit plaintiffs suffering constitutional right violations to recover personally from government officials who caused that harm.

reasoning by emphasizing the critical role that prosecutors play in obtaining a search warrant. *Burns*, 111 U.S. at 492 n.7. More specifically, the Court included language in its opinion explaining that in the particular court where the probable cause hearing took place, only prosecutors (or one of their deputies) could seek a search warrant or approve another individual to seek a search warrant. *Id.* In that court, a police officer did not have authority to go to the judge and obtain a search warrant. *Id.*

Here, all of the E.D. Va. AUSA Defendants are protected by absolute immunity. Ms. Slaey makes two claims against these Defendants. First, she attempts to hold them liable for participating in the process that resulted in a copy of the search warrant being left at SIM's facilities without describing the place to be searched and the items to be seized (Claim 1). Second, Ms. Slaey asserts that the E.D. Va. Defendants violated her Fourth Amendment rights by overseeing and supervising the drafting of a warrant that was broader in scope than probable cause allowed (Claim 2).[22] Ms. Slaey bases her claims on the following factual allegations stated in her Complaint:

> (1) That SA Adams "prepared an affidavit of probable cause to obtain a search warrant for Ms. Slaey's SIM office space, in which Mr. Adams listed the items to be searched for and seized with particularity. Mr. Adams also prepared a proposed search warrant and its attachments." Complaint at ¶ 31.
>
> (2) That SA Adams contacted the E.D. Va. U.S. Attorney's Office to have a "local" AUSA cause the necessary warrant to be issued. Complaint at ¶ 27.
>
> (3) That SA Adams "communicated with [SAUSA] Quinn to request that Mr. Quinn submit the application for a search warrant and a motion and order to seal

---

[22] While Claim 1 is invalid because it is time-barred, this analysis also applies to that claim and provides alternative grounds for dismissal.

the affidavit of probable cause and the application, as well as the motion to seal and the proposed order to seal." Complaint at ¶ 33.

(4) That SAUSA Quinn "prepared the motion and the proposed order and then signed the motion. The motion to seal did not seek to seal the search warrant or its incorporated attachments, but stated that the government was requesting authorization from the Court 'to leave a copy of the search warrant, without any attachments, at the location to be searched.'" Complaint at ¶ 34.

(5) That the other AUSA Defendants named in this case "failed to properly supervise Mr. Quinn and never reviewed the motion and proposed order to seal he prepared and never saw the provision included in that order which would invalidate the search warrant, or they saw and read the motion and proposed order to seal but purposefully and intentionally ignored the provision included in that order which would invalidate the search warrant." Complaint at ¶ 37.

These factual allegations only connect the E.D. Va. AUSA Defendants to the process of presenting a warrant application, a motion to seal, and a proposed order to seal to a magistrate judge. Nothing in the Complaint alleges that the E.D. Va. AUSA Defendants participated in the initial investigation of SIM, the on-location search and seizure of SIM's property, or the post-search disposition of the seized evidence. There is also no factual allegation suggesting that any E.D. Va. AUSA Defendant substantively changed the draft of the warrant or the attachments submitted by SA Adams, or that the E.D. Va. AUSA Defendants worked with SA Adams in establishing probable cause.

These facts are detrimental to Ms. Slaey because she can only get past the absolute immunity barrier if she alleges that the E.D. Va. AUSA Defendants were involved in

"investigative functions normally performed by a detective or police officer." *See Kalina*, 522 U.S. at 126 (citing *Hampton v. Chicago,* 484 F.2d 602, 608 (7th Cir. 1973). In this case, she has made no such allegation. Instead, all of the harm she alleges was committed by the E.D. Va. AUSA Defendants occurred as a result of their direct participation in the judicial phase of the criminal process. Prosecutors are entitled to absolute immunity in such situations. *See Burns*, 111 U.S. at 486, 492; *Imbler*, 424 U.S. at 430-31.

Moreover, similar to the warrant application process in *Burns*, the only way a police officer or federal agent can obtain a warrant in the E.D. Va. is to have a prosecutor submit the application to the judge. Therefore, without the help of SAUSA Quinn, or some other U.S. Attorney's Office official, SA Adams would not have been able to apply for and obtain a search warrant in the E.D. Va., move the court to seal the probable cause affidavit relating to that warrant, or gain permission to leave the warrant at the searched site without Attachments A and B. That SAUSA Quinn (and his supervisory AUSAs) played such an indispensible role in the procedures that SA Adams had to fulfill before obtaining both the warrant and permission to seal shows not only a close association between the criminal judicial process and the E.D. Va. AUSA Defendants in this case; it shows that these Defendants were an *actual part* of the criminal judicial process.

Finally, the Supreme Court in *Burns* specifically explained that appearing in court to support an application for a search warrant or to present evidence at a probable cause hearing is protected by absolute immunity. *See Burns*, 111 U.S. at 492. Here, all of the acts that the E.D. Va. AUSA Defendants allegedly performed involved appearing before the court to support an application for a search warrant. Therefore, any harm that resulted from these acts is protected by absolute immunity.

For the above reasons, the E.D. Va. AUSAs are entitled to absolute immunity from the claims alleged against them in Ms. Slaey's Complaint (Claims 1 and 2). Therefore, the claims asserted against the E.D. Va. Defendants fail to state a claim upon which relief can be granted and, as a result, must be dismissed under Fed. R. Civ. P. 12(b)(6).

In addition, for the same reasons that the E.D. Va. AUSAs are entitled to absolute immunity, AUSA Mann enjoys absolute immunity regarding any assistance she may have provided in the presentation of the warrant application, motion to seal, and proposed order to seal to the Magistrate Judge. This does not mean that AUSA Mann is entitled to absolute immunity from all of the harm she allegedly caused, however, because unlike the E.D. Va. AUSA Defendants, much of the harm she is accused of committing relates to the investigatory phase of the process and not the judicial phase. *See Kalina*, 522 U.S. at 126 (citing *Hampton*, 484 F.2d at 608).

### E. Qualified Immunity

The Court next determines whether SA Adams and AUSA Mann are entitled to qualified immunity from Ms. Slaey's claim that SA Adams drafted a warrant broader in scope than probable cause allowed, under AUSA Mann's supervision (Claim 2). The Court holds that both SA Adams and AUSA Mann enjoy qualified immunity from Claim 2. Qualified immunity is designed to shield officers performing their discretionary functions from civil damages "unless they are 'plainly incompetent' or they 'knowingly violate the law.'" *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court has set forth a two-prong test for determining whether qualified immunity applies. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). First, it must be determined whether the plaintiff has alleged a violation of a constitutional right in the complaint. *Id.* Second, "assuming that the

violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

Here, Ms. Slaey meets the first prong of the qualified immunity test. A valid warrant under the United States Constitution must not be broader than probable cause permits. *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982); *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980); *VonderAhe v. Howland*, 508 F.2d 364, 368-70 (9th Cir. 1974); 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6 (2008). Because Ms. Slaey claims that SA Adams drafted a warrant broader than probable cause allowed and that AUSA Mann supervised that activity (Claim 2), Ms. Slaey has alleged that SA Adams and AUSA Mann violated a constitutional right.

**i. Defining the Right under the Second Prong of the Qualified Immunity Analysis**

Before the Court can determine whether an objectively reasonable officer would know that his conduct was in violation of a clearly established right (Prong 2), the right at issue must be defined. Importantly, "[i]n deciding whether the right alleged to have been violated was clearly established, [the court] must define the right 'at a high level of particularity.'" *Bailey*, 349 F.3d at 741 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999)). In *Bailey*, two police officers took the plaintiff to a hospital for an emergency mental evaluation, against his will, after learning of a 911 report that described the plaintiff as suicidal. *Bailey*, 349 F.3d at 734. The officers admitted that they observed no suicidal tendencies in the plaintiff when they confronted him. *Id.* at 734. The plaintiff attempted to recover personally from the police officers under 42 U.S.C. § 1983, alleging that the officers, by forcing the plaintiff to undergo a

mental evaluation, violated his Fourth Amendment right to be free from unreasonable seizure. *Id.* at 737.

In determining whether the officers were entitled to qualified immunity, the Court explained that, at the time of the search, the law had been clearly established that: (1) an individual has "a general right to be free from seizure unless probable cause exists," *Id.* at 741 (quoting *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992)); and (2) "an officer must have probable cause to believe that the individual posed a danger to [him]self or others before involuntarily detaining the individual." *Id.* at 741 (quoting *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998)). But the Court reasoned that "the test of whether a right is clearly established . . . cannot be applied at this level of generality." *Id.* at 741. Instead,

> [d]efining the right at issue with the requisite level of particularity, the appropriate question is whether, at the time [the officers seized the plaintiff], it was clearly established that a police officer may not detain someone for an emergency mental evaluation based only on a 911 report that a person was suicidal, where the officers were able to observe the person alleged to be suicidal and observed nothing indicating that the person might have been a danger to himself.

*Id.* at 741.[23]

Here, SA Adams knew that SIM's alleged fraud occurred between 1998 and 2001. He also knew that despite this allegedly fraudulent period ending in 2001, SIM was still producing documents relating to work it performed under the BOA during the fraudulent period in 2003. Additionally, SA Adams was aware of a taped phone conversation where Ms. Slaey revealed that

---

[23]     In *Swanson*, the Fourth Circuit used the Due Process Clause to illustrate the importance of defining rights with particularity and not generality. *See Swanson*, 937 F.2d at 969. The Court explained that, because of this Clause, one might consider the general right to due process to be clearly established. *Id.* However, "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Id.* (quoting *Anderson*, 483 U.S. at 639).

she intentionally withheld documents from the Government.[24]   Finally, SA Adams knew at the time of the search that Ms. Slaey represented in a letter that she fully complied with the Government's subpoena even though SIM had not provided documentation for thousands of dollars billed to and paid for by GSA under the BOA.

Ms. Slaey argues that the warrant exceeded probable cause because even though the alleged fraud occurred between 1998 and 2001, neither the warrant nor the attachments limited the search to that date range. Ms. Slaey also argues that even though the fraud related only to a contract between GSA and SIM, the warrant did not limit the search to documents pertaining only to that contract. As a result, the warrant permitted the GSA Defendants to seize all of Ms. Slaey's personal and business banking records regardless of the subject matter of these items, or their date. The warrant also permitted the GSA Defendants to seize invoices, billings, time sheets, personnel files, and travel vouchers relating to the SIM BOA that were dated well after the alleged fraudulent period ended in 2001.

Defining the right at issue with the requisite level of particularity, the appropriate question is whether it was clearly established to a reasonable officer that a warrant without date and subject matter limitations violated the Fourth Amendment when the following facts existed at the time the warrant was written: (1) the company that was the subject of the search was suspected of fraud, (2) an employee of that same company admitted that she was intentionally withholding information from the government and misrepresented the extent to which her company had complied with a federal investigation, and (3) the allegedly fraudulent company was still producing documents in 2003 relating to work it performed during the alleged

---

[24]     In a taped phone conversation with an informant, Ms. Slaey was asked whether she had turned over "all the records" requested by the Government. Ms. Slaey replied, "No, of course not. We weren't about to."

fraudulent period that ended in 2001. The right at issue is not, as Ms. Slaey argues, whether it was clearly established that the Fourth Amendment unequivocally prohibited unreasonable governmental searches. The Supreme Court and the Fourth Circuit do not condone defining the right with such generality. *See Saucier*, 533 U.S. at 200-02; *Bailey*, 349 F.3d at 741; *Swanson*, 937 F.2d at 969.

### ii. Analysis of whether SA Adams Violated the Defined Right at Issue

Now that the right has been defined, the Court can determine whether an objectively reasonable officer would know that his conduct violated that right. "[T]he contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991). Thus, government officials are not liable for bad guesses in "gray areas" where the law is "unsettled or murky." *Doe v. Broderick*, 225 F.3d at 453; *see McVey v. Stacey*, 157 F.3d 271, 277 (4th Cir. 1998). Rather, government officials are liable only when they "transgress[] bright lines." *Doe v. Broderick*, 225 F.3d at 453 (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he greater the similarity of the existing case law to the situation at hand, the greater its guidance to a reasonable [government] official." *Swanson*, 937 F.2d at 969.

These rules illustrate the importance of viewing SA Adams's actions in light of the search and seizure case law in effect at the time he wrote the warrant.[25] *See Swanson*, 937 F.2d at 969.

---

[25] Since the warrant in this case was executed in the Eastern District of Virginia, Fourth Circuit case law and Supreme Court case law is most relevant. All of the case law mentioned below was in existence at the time SA Adams wrote the warrant.

30

In *United States v. Torch*, the Fourth Circuit explained that "the test for the necessary particularity [of the warrant] is a pragmatic one: 'The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances of items involved . . . [T]here is a practical margin of flexibility by the constitutional requirement for particularity in the description of items to be seized.'" *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976)).

The Fourth Circuit has also provided guidance on how specific a warrant must be in describing the goods to be seized in a fraud situation. In *United States v. Shilling*, the defendant was accused of, *inter alia*, committing tax fraud. 826 F.2d 1365, 1366 (4th Cir. 1987). The defendant argued that his Fourth Amendment rights were violated because the search of his residence was based on an overbroad warrant. *Id.* at 1367. The Court explained that, without question, the search warrant had to sufficiently describe the items to be seized in the defendant's residence in order to be valid. *Id.* at 1369. But while the warrant in *Shilling* contained a two-page list of items to be seized in the search, these items were described generically and without detailed descriptions (e.g., the two-page list referred to "books, records, bank statements, etc."). *Id.* The warrant also failed to include time limitations. *Id.*

Nevertheless, the Court found that the generic two-page list was acceptable, since "the Government could hardly have known in detail what precise business records were maintained by the defendant." *Id.* at 1369. The Court also explained that the lack of time limitations did not require invalidation, because "[t]he dates of specific documents could not have been known to the Government, and, as for income tax violations, documents from an earlier time may have bearing on tax violations alleged in a later year." *Id.* at 1369.

31

Here, SA Adams was entitled to a "practical margin of flexibility" regarding his description of the items to be seized in his search warrant. *See Torch*, 690 F.2d at 1090. SA Adams also had at his disposal a Fourth Circuit case upholding, in a tax-fraud situation, a warrant containing no temporal restrictions and a generic list of items to be seized. *See Shilling*, 826 F.2d at 1369. In light of *Torch* and *Shilling*, it would not have been objectively unreasonable for SA Adams to conclude that his warrant was sufficiently particular even though it lacked specific date ranges and failed to limit the search only to documents pertaining to the GSA-SIM contract.

Furthermore, like the defendant in *Shilling*, the entity that was the subject of the search in this case was suspected of fraud. The facts suggested that SIM and its employees were not complying with the Government's investigation and were intentionally withholding documents. Therefore, it would not have been objectively unreasonable to believe that potentially relevant documents were being hidden among other documents that did not relate to the GSA-SIM contract or fall within the 1998 to 2001 time frame. Additionally, SIM was still producing documents relating to work it performed under the BOA in 2003, even though the allegedly fraudulent period ended in 2001. Thus, it also would not have been objectively unreasonable to believe that limiting the warrant to documents from 1998 to 2001 would have failed to cover the universe of documents relating to the fraud alleged in the probable cause affidavit.

In light of the Fourth Circuit search and seizure case law described above, the Court cannot conclude that it was clearly established to a reasonable officer that a warrant without temporal or subject matter limitations violated the Fourth Amendment under the facts of this

case. Therefore, SA Adams is entitled to qualified immunity regarding Ms. Slaey's claim that

the search warrant was broader in scope than probable cause allowed (Claim 2).[26]

In discerning what SA Adams knew about the SIM fraud, and consequently, in reaching

the conclusion that qualified immunity applies, the Court used facts from the affidavits and

attachments that the SA Adams appended to his memoranda in support of his "Motion to

Dismiss, or in the Alternative for Partial Summary Judgment." Thus, these facts were taken

from documents outside the Complaint. For this reason, and because Ms. Slaey clearly had

adequate notice that the motion filed by the GSA Defendants and AUSA Mann could be

converted (see Section II.B of this Opinion), the Court shall convert SA Adams's motion to

dismiss into a motion for summary judgment. *See Laughlin*, 149 F.3d at 260-61; *Alternative

Energy*, 267 F.3d at 33; *Phillips*, 190 F.3d at 618.

Applying the summary judgment standard, the Court grants summary judgment in favor

of SA Adams regarding Ms. Slaey's claim that the search warrant was broader in scope than

probable cause allowed (Claim 2). There is no disputing that SA Adams had sufficient facts

before him to suspect SIM of fraud at the time he wrote the warrant, which were the facts used to

justify the finding that qualified immunity applied. Therefore, no genuine issue of material fact

exists regarding the Court's qualified immunity decision. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477

---

[26]     Resolving the qualified immunity issue at this stage of the litigation is
appropriate. The question of qualified immunity should be resolved at the earliest possible stage
of the litigation, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam), since qualified
immunity is an "immunity from suit" and not "a mere defense to liability." *Mitchell v. Forsyth*,
472 U.S. 511, 526 (1985). Consequently, "such pretrial matters as discovery are to be avoided if
possible." *Mitchell*, 472 U.S. at 526.
         Additionally, it is worth noting that Judge Bartle's well-reasoned analysis in the
motion to suppress hearing cannot be applied in this case. The Court's analysis here requires it
to consider how a reasonable officer would interpret search and seizure case law at the time SA
Adams applied for the warrant. Judge Bartle's opinion, of course, was issued after SA Adams
submitted his warrant application.

U.S. at 322.  As a result, a grant of summary judgment is appropriate and SA Adams "is entitled to a judgment as a matter of law."  *Id.*

In addition, because SA Adams is entitled to qualified immunity from the overbroad warrant claim (Claim 2), AUSA Mann enjoys qualified immunity for any supervisory assistance she provided to SA Adams during the warrant drafting process.  Therefore, AUSA Mann is also entitled to a grant of summary judgment regarding Claim 2.

### III. CONCLUSION

For the foregoing reasons, the "Motion to Dismiss, or in the Alternative for Partial Summary Judgment" filed by SA Adams and AUSA Mann is granted regarding Ms. Slaey's claim against them that the search warrant was broader in scope than probable cause allowed (Claim 2).  All other claims are dismissed under Fed. R. Civ. P. 12(b)(6) on either statute of limitations or absolute immunity grounds.  Accordingly, Ms. Slaey's case is dismissed in its entirety.

Entered this 23rd day of December, 2008.

Alexandria, Virginia

_____ /s/ _____
Liam O'Grady
United States District Judge